**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal No. |
| MAXIMO LARYI HERRERRA PENA, | ) 10-10017-NMG |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendant Maximo Laryi Herrerra Pena, a.k.a., Emerson Adams ("Pena") is scheduled to be sentenced by this Court for the crimes of conspiracy and aiding and abetting in the distribution of heroin. Currently before the Court are his motions 1) to require the government to prove, beyond a reasonable doubt, its averment that death resulted from his crimes and 2) for an evidentiary hearing on the issue of death resulting.

I.  **Background**

On December 23, 2010, a second superseding indictment was returned charging defendant Maximo Laryi Herrerra Pena, a.k.a., Emerson Adams ("Pena") and various co-defendants with conspiracy to possess with the intent to distribute and to distribute heroin, in violation of 21 U.S.C. § 846 and 841(a)(1), (b)(1)(B) (Count I), and aiding and abetting in the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C.

§ 2 (Count II).

The conspiracy count further alleges that 100 or more grams of heroin were involved, and both counts allege that death and serious bodily injury resulted from the use of that heroin. The death-resulting allegation pertains to the defendant's alleged role in distributing heroin to Chelsea Joslin on July 30, 2009. The following day, Ms. Joslin was found dead at the home she shared with her parents in Brewster, Massachusetts. A medical examiner determined that heroin played a significant causal role in her death.

On February 9, 2012, the defendant pled guilty to both counts without waiving his defense to the death-resulting allegation or admitting during the Rule 11 colloquy that any of the heroin distributed by him, or by other members of the conspiracy in which he participated, resulted in the death of Ms. Joslin. The government took the position that the resultant death is not an element of either offense (and therefore it need not be admitted to sustain the convictions) but rather is a sentencing factor that may be proved to a judge by a preponderance of the evidence at sentencing.

The defendant has moved to require the government to prove the death resulting averment to a jury beyond a reasonable doubt or, in the alternative, for an evidentiary hearing on the matter.

## II.  **Pertinent Statutory Provisions and Sentencing Ranges**

Before addressing the merits of the defendant's motions, a brief description of the the pertinent statute, 21 U.S.C. § 841, is in order.  Subsection (a) of that statute, entitled "unlawful acts", makes it a crime

> for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense, a controlled substance.

Subsection (b), entitled "penalties", provides that "any person who violates subsection (a) of this section shall be sentenced as follows..." and proceeds to list sentencing ranges based upon facts such as drug quantity or type, prior conviction and whether death or serious bodily injury resulted from the use of the counterfeit substance.

The pertinent "penalty" provisions in this case are § 841(b)(1)(B) and (C).  Under § 841(b)(1)(B), a person who distributes 100 or more grams of heroin "shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years."  Under § 841(b)(1)(C), a person who distributes less than 100 grams of heroin "shall be sentenced to a term of imprisonment of not more than 20 years."  Both provisions provide that if death or serious bodily injury results from the use of the distributed substance, "such person ... shall be sentenced to a term of imprisonment of not less than 20 years or more than life."

Applying those provisions here, Pena faces a sentence of between 20 and 40 years on Count One and 20 years on Count Two if the Court concludes that "death resulting" is a sentencing factor and finds it has been proved by a preponderance of the evidence.[1] By contrast, Pena faces a sentence of between 5 and 40 years on Count One and between 0 and 20 years on Count Two if the Court concludes that "death resulting" is an element of the crime or, alternatively, that the government did not meet its preponderance of the evidence burden. Only if the "death resulting" averment were submitted to a jury and proved beyond a reasonable doubt would the Court be authorized to impose a sentence in excess of the 40-year and 20-year statutory maximums. See Apprendi v. New Jersey, 530 U.S. 466, 489 (2000) (holding discussed below).

## III. **Analysis**

Defendant's motions present three quandaries: 1) the impact of Apprendi on the range of sentences this Court may impose, 2) whether "death resulting" is a sentencing factor or an element of a separate crime and 3) if the Court considers it a sentencing factor, whether the Court should hold an evidentiary hearing.

---

[1] The requirement of a 20-year sentence is the peculiar convergence of the 20-year mandatory minimum and the 20-year statutory maximum. United States v. Krieger, 628 F.3d 857, 863 (7th Cir. 2010) ("Apprendi, in this case, set the maximum sentence at twenty years, for the facts to which Krieger pleaded. The death resulting finding set the minimum sentence at twenty years. Thus, the mandatory minimum converged with the statutory maximum and the district court could impose but one sentence – twenty years.").

**A.    Impact of __Apprendi__ and __Harris__**

__Apprendi__ v. __New Jersey__, 530 U.S. 466, 489 (2000), announced the familiar constitutional limit on Congress's power to define crimes: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum," whether designated by statute as an element or a sentencing factor, "must be submitted to a jury, and proved beyond a reasonable doubt."  As a result, judge-found sentencing factors cannot increase the maximum sentence a defendant is authorized to receive based on facts found by a jury or admitted to during a Rule 11 colloquy. __Id.__  As a corollary, any fact that increases the penalty for a crime within the statutory maximum may be found by a judge by a preponderance of the evidence, even if that fact subjects a defendant to a mandatory minimum sentence. __Harris__ v. __United States__, 536 U.S. 545, 567-68 (2002).

According to the defendant, __Apprendi__ mandates that "death resulting" be proved to a jury beyond a reasonable doubt because it raises the maximum authorized penalty on both counts to life imprisonment.  The statutory maximum sentence for the conspiracy crime alleged in Count One is 40 years, 21 U.S.C. § 841(b)(1)(B), and the statutory maximum sentence for the distribution crime set forth in Count Two is 20 years, 21 U.S.C. § 841(b)(1)(C). Defendant is correct that a finding that the defendant caused the death of Ms. Joplin would trigger a 20-year mandatory minimum and

increase the statutory maximums for both counts to life imprisonment. That alone, however, does not implicate _Apprendi_.

It is settled law in this Circuit that "_Apprendi_ error arises only if the defendant _receives_ a sentence beyond the default statutory maximum for the offense of conviction." _United States_ v. _Jiminez_, 498 F.3d 82, 87 (1st Cir. 2007) (emphasis added). As long as this Court sentences Pena within the statutory maximums authorized by the facts admitted in his plea colloquy (40 years and 20 years for Counts One and Two, respectively), _Apprendi_ is not implicated.

**B.   Death resulting: sentencing factor or element of separate crime?**

Of far greater significance and complexity is the second issue: whether the death resulting averment is an element of a separate crime or a sentencing factor. Pena contends that the "death resulting" averment in the Indictment is a separate crime and, as such, must be proved to a jury beyond a reasonable doubt consistent with the Fifth and Sixth Amendments to the United States Constitution. The government responds that death resulting is a sentencing factor which may be proved to a judge by a preponderance of the evidence at sentencing. If the Court concludes that it is an element of a separate crime, the 20-year mandatory minimum may not be imposed unless a jury trial is convened to adjudicate that discrete issue and the government proves the resultant death beyond a reasonable doubt.

### 1. The Separate Crime Cases

Because this issue conjoins complicated matters of statutory interpretation and constitutional law, its background will be rehearsed in some detail. While the Supreme Court has declined, since Apprendi, to adopt any further constitutional limitations on Congress's power to define crimes, it has on a number of occasions parsed criminal statutes to determine whether Congress intended for certain statutory provisions carrying severe penalties to be considered sentencing factors (to be found by a judge by a preponderance of the evidence) or elements of separate crimes (to be found by a jury beyond a reasonable doubt).

Instead of analyzing the prudence or constitutionality of allocating certain kinds of conduct to the sentencing phase rather than the trial phase, the Supreme Court has limited its inquiry to determining whether or not Congress intended to do so. See, e.g., Castillo v. United States, 530 U.S. 120, 126 (2000). To discern the intent of Congress, the Court reviews the statute's language and structure, the length and severity of the punishment it imposes and whether the provision in question is a "traditional sentencing factor." See id.

In Almendarez-Torres v. United States, 523 U.S. 224, 226 (1998), the Court reviewed 8 U.S.C. § 1326(a), which forbids previously deported aliens from returning to the United States without special permission and authorizes a maximum punishment of

two-years imprisonment for violations.  Subsection (b)(2) authorizes a considerably longer maximum prison term (20 years) for any violator whose initial deportation "was subsequent to a conviction for commission of an aggravated felony." Id. at 232. In Almendarez-Torres, the Court framed the issue as whether subsection (b)(2) "defines a separate crime or simply authorizes an enhanced penalty." Id. at 226.

Concluding that Congress intended the prior commission of an aggravated felony to be a sentencing factor rather than an element of a separate crime, the Court relied principally on statutory language, subject matter and purpose. Id. at 228-46. It first noted that recidivism, the subject of the enhancement, is "as typical a sentencing factor as one might imagine," an indication that Congress intended it as a sentencing factor in the deportation statute as well. Id. at 230.  Turning to the statute itself, the Court noted that the inclusion of internal cross-references between subsections (a) and (b) would not have been necessary or natural if Congress had intended the subsections to define two separate, independent crimes. Id. at 231.  Next, the Court emphasized that characterizing the two provisions as separate crimes would result in cumulatively punishing a defendant for two crimes where one crime is a lesser included offense of the other, a result that it presumed Congress would never intend. Id.  Finally, the Court pointed out that the 1988

-8-

amendment incorporating subsection (b) is titled "Criminal

penalties for reentry of certain deported aliens" and stated that

> [a] title that contains the word 'penalties' more often,
> but certainly not always … signals a provision that deals
> with penalties for a substantive crime.

Id. at 234.  For all of those reasons, the Court concluded that

Congress's intent was "reasonably clear."

The inquiry was not as straightforward in Jones v. United

States, 526 U.S. 227 (2002).  In that case, the Court considered

18 U.S.C. § 2119, which provides that any person who carjacks

another shall be imprisoned for not more than 15 years unless

serious bodily injury or death results, in which case the maximum

authorized punishment is increased to 25 years and life

imprisonment, respectively.  The Court framed the issue as

whether Congress intended the statute to define three distinct

offenses or a single crime with a choice of three maximum

penalties based on two sentencing factors.  Id. at 229.  As with

the deportation statute, § 2119 begins with an initial paragraph

describing the statute's obvious elements and then lists the

penalties in subsections.  The Court acknowledged that the

language and structure of § 2119 strongly suggest that Congress

intended the "serious bodily injury" and "death" resulting

enhancements to serve as sentencing factors.  Id. at 233.

Yet the Court held to the contrary, finding that the

"serious bodily injury" and "death" provisions constitute

separate crimes that must be proved to a jury beyond a reasonable doubt. Id. at 251-52. The Court emphasized that many federal and state robbery statutes include causation of serious bodily injury or harm as an element defining a distinct offense of aggravated robbery, an indication that Congress intended to prescribe similar treatment of those enhancements in the federal carjacking statute. Id. at 235-37. What was apparently most persuasive was the magnitude of the penalties the statute authorizes on the basis of judicial fact-finding:

> These not only provide for steeply higher penalties, but condition them on further facts (injury, death) that seem quite as important as the elements in the principal paragraph (e.g., force and violence, intimidation). It is at best questionable whether the specification of facts sufficient to increase a penalty range by two thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit.

Id. at 234. Given the perceived ambiguity, the Court invoked the doctrine of constitutional doubt and construed the statute to define three distinct offenses. Id. at 251-52. In so doing, it signaled a potential willingness to impose a further constitutional limit on Congress's power to define crimes.

Over the succeeding few years, the Court analyzed three provisions of a federal firearm statute, 18 U.S.C. § 924(c), which prohibits any person from using a firearm in connection with a crime of violence or drug trafficking, and sets forth escalating mandatory minimums depending on the type of weapon

used and manner in which it was used: five years if the gun is possessed, seven years if the gun is brandished, ten years if the gun is discharged, short-barreled, or semiautomatic, and thirty years if the gun is a machinegun or has a silencer. See Harris v. United States, 536 U.S. 545 (2002) (interpreting the brandishing provision); Castillo v. United States, 530 U.S. 120 (2000) (interpreting the original machinegun enhancement); United States v. O'Brien, 130 S.Ct. 2169 (2010) (interpreting the amended version of the machinegun enhancement). As with Jones and Almendarez-Torres, each of those cases was reviewed to resolve the discrete issue of whether the respective provision constitutes a sentencing enhancement or an element of a separate crime.

Ultimately, the Court interpreted the machinegun enhancement as an element of a separate crime, see Castillo, 530 U.S. at 131 and O'Brien, 130 S.Ct. at 2180, but characterized the brandishing enhancement as a sentencing factor, see Harris, 536 U.S. at 556. In Harris, the Court pointed to the statute's structure (a single paragraph followed by a number of subsections) as evidence that Congress intended the brandishing enhancement, which is located in a subsection, to function as a sentencing factor. 536 U.S. at 552-53. In Castillo and O'Brien, however, the Court characterized the machinegun enhancement as an element of a separate crime, even though the brandishing and machinegun provisions were framed in substantially identical terms and

located in structurally parallel provisions. 530 U.S. at 131; 130
S.Ct. at 2180.

The Court noted two distinctions between the machinegun and
brandishing provisions.  First, it found that brandishing is a
"paradigmatic sentencing factor" because it involves "special
features of the manner in which a basic crime was carried out
(e.g., that the defendant . . . brandished a gun)." Harris, 536
U.S. at 553.  It concluded that the type of gun used, on the
other hand, has not traditionally been understood as a sentencing
factor. Castillo, 530 U.S. at 126.  Second, it noted that

> the length and severity of an added mandatory sentence
> that turns on the presence or absence of a "machinegun"
> (or any of the other listed firearm types) weighs in
> favor of treating such offense-related words as referring
> to an element.

Id. at 131.  In contrast, it concluded that the brandishing
enhancement "ha[s] an effect on the defendant's sentence that is
more consistent with traditional understandings about how
sentencing factors operate," insofar as it allows for
incremental, rather than drastic, increases to the mandatory
minimum sentence. Harris, 536 U.S. at 554.

### 2.　United States v. Goodine

While the First Circuit has not addressed whether "death
resulting" in § 841(b) is a sentencing factor or an element of a
separate crime, it has held that the question of drug quantity in
§ 841(b) is a sentencing factor.  See United States v. Goodine,

-12-

326 F.3d 26, 27 n.3, 32 (1st Cir. 2003).  In determining that
drug quantity is a sentencing factor, the Court emphasized 1) the
clear language and structure of the statute, 2) that a judge's
determination of drug quantity will simply guide the judge to a
sentence within the permissible statutory range and 3) that "drug
quantity is a classic sentencing factor" because it "goes to how
the offense is conducted, rather than the result of the crime."
Id. at 31-32.  The Court then noted "a practical result" of its
ruling: if all the facts contained in § 841(b) were to be treated
as elements, "the statute would define as many as 350 different
offenses.  Such an interpretation causes difficulty we think
Congress did not intend."  Id. at 32.

Goodine is not directly controlling here because the First
Circuit did not address the fact of "death resulting" and the two
provisions are materially different.  It is nevertheless
instructive because 1) it interpreted a penalty provision located
in the same section of the same statute and 2) its use of the
factors outlined in Castillo provides a helpful starting point for
this Court's analysis.

### 3.  **Castillo Factors**

In Castillo, the Supreme Court outlined five factors to
consider in determining whether Congress intended for an
enhancement to be a sentencing factor or an element of a separate
crime: 1) the language and structure of the statute in question,

-13-

2) tradition, 3) the risk of unfairness, 4) the legislative history and 5) the severity of the sentence increase. 530 U.S. at 124-31.

With respect to the first factor, the language and structure of § 841 is a very strong indication that Congress intended for death resulting to be a sentencing factor rather than an element. "Federal laws usually list all offense elements in a single sentence and separate the sentencing factors into subsections." Harris, 536 U.S. at 552 (internal quotation omitted). Here, § 841(a), titled "unlawful acts", defines an offense and § 841(b), titled "penalties", delineates sentencing ranges for violations thereof based on drug type and quantity, prior conviction and whether death or serious bodily injury resulted from use of the controlled substance. In holding that drug quantity is a sentencing factor rather than an element, the First Circuit has stated that "[a] straightforward reading suggests that part (a) identifies a crime and part (b) outlines different penalties for that crime." Goodine, 326 F.3d at 31 (internal citation omitted). That "death resulting" is located in the same subsection is thus highly relevant, if not dispositive.

Nonetheless, the Supreme Court has specifically admonished that, when resolving whether a fact is a sentencing factor or element, the "look" of a statute "is not a reliable guide to congressional intentions" where the provisions in question "not only provide for steeply higher penalties, but condition them on

further facts (injury, death) that seem quite as important as the elements in the principal paragraph...." <u>Jones</u>, 526 U.S. at 233; <u>see also</u> United States v. O'Brien, 542 F.3d 921, 924-25 (1st Cir. 2008), aff'd, 130 S. Ct. 2169 (2010) (noting that application of the Supreme Court's test has, several times, required courts to treat facts as elements rather than sentencing factors "even though bare statutory language might seem to point the other way"). Notably, however, the Court commented that Congress had "explicitly" treated serious bodily injury as a sentencing factor in two statutes which, similarly to § 841, listed elements of a crime in one section titled "offenses" or "prohibited activities" and then listed sentencing ranges in a subsequent section titled "penalties". <u>Id.</u> (citing 18 U.S.C. §§ 2262(b)(2) and 248(b)(2)). Nonetheless, absent an explicit statement from Congress in the statute itself that death resulting is a sentencing factor, the Court must consider the remaining <u>Castillo</u> factors.

The second factor to consider is whether Congress has traditionally treated death-resulting as a sentencing factor or element. The Supreme Court has stated that, generally,

> [t]raditional sentencing factors often involve either characteristics of the offender, such as recidivism, or special features of the manner in which a basic crime was carried out (e.g., that the defendant abused a position of trust or brandished a gun).

<u>Castillo</u>, 530 U.S. at 126; <u>see also</u> <u>Goodine</u>, 326 F.3d at 32 ("[D]rug quantity goes to how the offense is conducted, rather than

the result of the crime.  As such, it is more analogous to the statutes in which the Supreme Court identified sentencing factors.").   In contrast, "[c]haracteristics of the offense itself," such as the fact of a resultant death or bodily injury, "are traditionally treated as elements." <u>O'Brien</u>, 130 S. Ct. at 2176.  Even so, the fact of death (or bodily injury) is, as the Seventh Circuit has noted, often listed in the "penalties" portion of statutes, indicating "that Congress seems to have intended for courts to consider the fact that a death has resulted as a sentencing factor."  <u>United States</u> v. <u>Krieger</u>, 628 F.3d 857, 865-66 (7th Cir. 2010) ("It would be odd indeed for Congress to habitually include 'death resulting' types of increases in portions of statutes labeled 'penalties' or 'punishments' when in fact Congress intended for this factor to be included as an element.").  Thus, insofar as the definitional framework conflicts with real-world practice, "tradition" with respect to death-resulting is difficult to discern and is not a particularly compelling factor.

        In the Court's view, the third factor is not implicated here because there is no indication that asking a jury, rather than a judge, to decide whether a death resulted would complicate the trial or unfairly prejudice the defendant.  The fact of death resulting is distinguishable from facts which have previously been found to risk unfairness: there is no potential conflict between the findings of the judge vis-a-vis the jury, see, e.g.,

Castillo, 530 U.S. at 128 (noting a potential for unfairness where "a judge's later, sentencing-related decision" might conflict with a jury's prior factual determinations), and the question of death-resulting involves only the repercussions of the crime with which the defendant is currently charged rather than past wrongs or bad acts which may be less relevant or unfairly used as character evidence, see, e.g., Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998) (noting that requiring the jury to determine the fact of recidivism risks unfairness because "the introduction of evidence of a defendant's prior crimes risks significant prejudice").  In any event, risk of unfairness is not a factor upon which courts have placed much emphasis.

The fourth factor, legislative history, does not point strongly in one direction or the other.  The First Circuit has observed that, when enacting § 841, Congress referred to the "sentencing procedures" as affording "maximum flexibility to judges", suggesting that Congress viewed the penalty provisions as sentencing factors, Goodine, 326 at 31 (citing H.R. Conf. Rep. 91 1444 (1970)), but has also noted that the legislative history "is scarce, and others have found it unhelpful", id.

The fifth factor, the severity of the sentence accompanying a finding that death resulted, here indicates that death-resulting is an element, not a sentencing factor.  A finding that

death resulted from use of the drugs that Pena distributed would escalate his minimum sentence from 5 to 20 years for Count One and from 0 to 20 years for Count Two. Moreover, upon a such finding, the Court's sentencing discretion, at least with respect to Count Two, would not merely be constrained but would be eviscerated insofar as only one sentence (20 years) would be permissible.

The Supreme Court has emphasized that sentencing factors typically do not entail "drastic" or "steeply higher penalties" but rather involve "incremental changes in the minimum" that constrain a judge's discretion within a sentencing range. Compare O'Brien, 130 S. Ct. at 2177 (finding that increase in mandatory minimum from 5 years to 30 years strongly suggests a separate substantive crime), and Jones, 526 U.S. at 233 (same for increase from 15 years to life), with Harris, 536 U.S. at 554 ("[I]ncremental changes in the minimum – from 5 years, to 7, to 10 – are precisely what one would expect to see in provisions meant to identify matters for the sentencing judge's consideration."). As the Court emphasized in Jones,

> It is at best questionable whether the specification of facts sufficient to increase a penalty range by two thirds, let alone from 15 years to life, was meant to carry none of the process safeguards that elements of an offense bring with them for a defendant's benefit.

526 U.S. at 233. The Court reiterated most recently in O'Brien that

> [i]t is not likely that Congress intend[s] to remove the
> indictment and jury trial protections when it provide[s]
> for such an extreme sentencing increase.

130 S. Ct. at 2178.

In sum, the two factors weighed most heavily by the Supreme
Court in the separate crime analysis are at loggerheads: the
statutory language and structure of § 841 point decisively toward
a finding that death resulting is a sentencing factor, whereas
the steep mandatory minimum imposed upon a finding of death tugs
in the opposite direction.  The remaining factors do not counsel
strongly in one direction or the other.

### 4.  Circuit Split

With the Castillo factors divided, it is unsurprising that
the two Circuit Courts which have reached the issue fail to agree
on the proper outcome.

The Sixth Circuit has held that the fact of death resulting
is an element, emphasizing the drastic sentence increase
attendant upon a finding of a resultant death:

> it would indeed require a casual approach to the trial
> rights afforded defendants under our Constitution if this
> court were to allow a trial court to determine that a
> defendant who pled guilty merely to the physical
> distribution of a drug (with a corresponding sentence of
> less than 20 years) is subject to a sentence of up to
> life imprisonment because the court believed, only by a
> preponderance of the evidence, that death resulted from
> that crime . . . .

United States v. Rebmann, 226 F.3d 521, 525 (6th Cir. 2000).  Two
district courts have joined the Sixth Circuit in holding that

death resulting is an element of a separate crime. <u>United States</u>
v. <u>Westry</u>, No. 05-0206, 2006 WL 538885, at *2-3 (S.D. Ala. Mar.
3, 2006); <u>United States</u> v. <u>Martinez</u>, 268 F. Supp. 2d 70 (D. Mass.
Jun. 3, 2003).

The Seventh Circuit has reached the opposite conclusion. In
holding that death resulting is a sentencing factor, the Seventh
Circuit relied on statutory language and structure and its prior
decisions construing drug quantity as a sentencing factor:

> Certainly there are factors ... that point us toward
> defining "death resulting" as an element of the crime,
> but this court is hard pressed to ignore the most
> important considerations: first, the clear command of the
> language listing "death resulting" in the "penalties"
> section of the statute, and second, our precedent (at
> least when considering drug quantity) of defining the
> considerations in § 841(b) as sentencing factors (so long
> as they do not increase the sentence above the statutory
> maximum).

<u>Krieger</u>, 628 F.3d at 866-67.

That lower courts have had difficulty situating the first
and fifth factors within the decisional calculus is unsurprising.
Reconciling Jones and O'Brien with Almendarez-Torres and Harris
is no easy task. In each of those cases, the Supreme Court
stated that it was not imposing a constitutional limit on the
ability of Congress to define crimes but rather was simply
striving to divine its intent. If that were so, one would expect
the Court to have focused primarily on the language and structure
of the statutes and to have turned to secondary indicia of

congressional intent only where the statutes themselves were
ambiguous.  That is not, however, what has transpired.

### 5.  Conclusion

In any event, with respect to the conflict between the clear
command of the statute and the significant mandatory sentence
increase it mandates, this Court agrees with the Seventh Circuit
and will rely upon the statutory language to discern the intent
of Congress.  By including the provision in the "Penalties"
section of the statute, 21 U.S.C. § 841(b), Congress quite
clearly expressed its intent to make death resulting a sentencing
factor.  The Court will treat it as such.

### C.  **Evidentiary Hearing**

To prove "death resulting", the government must show "cause-
in-fact", i.e.,

> that the decedent's death was caused in fact by his or
> her use of drugs that were distributed either by the
> defendant himself or by others in a conspiracy of which
> the defendant was a part.

United States v. De La Cruz, 514 F.3d 121, 138 (1st Cir. 2008).

Pena asserts that an evidentiary hearing is warranted to
probe two particular issues: 1) the credibility (or lack thereof)
of Joshua Johnson ("Johnson"), a co-conspirator who pled guilty
on both counts and, after entering into a favorable plea
agreement, testified at a grand jury hearing, and 2) whether or
not heroin was, in fact, the cause of Chelsea Joslin's death.
Pena seeks to confront both Johnson and Dr. Henry Nields ("Dr.

Nields"), the medical examiner who performed Ms. Joslin's autopsy and testified that he was unable to rule out the possibility that other substances in her system at the time of her death had alone been fatal.  The government responds that such cross-examination is unnecessary because the grand jury testimony of those witnesses is corroborated by other evidence and is thus reliable. See United States v. Williams, 10 F.3d 910, 914 (1st Cir. 1993) ("[W]e repeatedly have upheld reliance on prior hearsay testimony never subjected to cross-examination, so long as there were other adequate indicia of reliability.").

The Court concludes that the defendant has met his burden of showing that "material facts are in genuine doubt or dispute" and that a hearing would be helpful in resolving that dispute. Lilly, 983 F.2d at 310;  United States v. Rodriguez, 336 F.3d 67, 70 (1st Cir. 2003).  Moreover, given the substantial impact a finding of death would have on the defendant's sentence, fairness dictates that defendant be provided an opportunity to challenge the basis upon which the death-resulting allegation rests. Johnson and Dr. Nields are both essential witnesses in that regard and their further testimony may be useful to the Court in ascertaining whether the defendant's heroin was ingested by Ms. Joslin and caused her death.  See Krieger, 628 F.3d at 861 (evidentiary hearing held to determine whether fentanyl was the

cause of death because the victim had numerous other substances in her system).

**ORDER**

In accordance with the foregoing, the defendant's motion to require the government to prove the "death resulting" element to the jury beyond a reasonable doubt (Docket No. 133) is **DENIED**, but the defendant's motion for an evidentiary hearing (Docket No. 162) is **ALLOWED.**

The Court will hold an evidentiary hearing (not to exceed three hours) on Thursday, July 19, 2012 at 10:00 a.m. on the limited issue of whether the government can establish by a preponderance of the evidence that Chelsea Joslin's death resulted from use of heroin the defendant caused to be distributed. The government shall make Joshua Johnson and Dr. Neilds available to testify.


**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated July 18, 2012